USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/17/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
CHARLES DANIELS, et al., :
:
                      Plaintiffs, :
::   17 Civ. 9960 (LGS)
        -against- :
:   **OPINION AND ORDER**
THE CITY OF NEW YORK, et al., :
                    Defendants. :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

    Plaintiffs, African-American males who are current and former Executive Staff and supervisory employees of the New York City Department of Corrections ("DOC"), bring this action alleging employment discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000a et seq. ("Title VII"), the New York State Human Rights Law, N.Y. Executive Law § 290 et seq. ("NYSHRL"), the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq. ("NYCHRL") and 42 U.S.C. § 1983 ("§ 1983") against Defendants the City of New York ("City"), DOC, DOC Commissioner Cynthia Brann, former DOC Commissioner Joseph Ponte, Chief of Staff Jeff Thamkittikasem and former Chief of Department Martin Murphy. Defendants move for partial dismissal of the Amended Complaint ("Complaint") for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons below, the motion is granted in part and denied in part.

I. **BACKGROUND**

    The following facts are taken from the Complaint and accepted as true for purposes of this motion. *See Doe v. Columbia Univ.*, 831 F.3d 46, 48 (2d Cir. 2016).

    Plaintiff Charles Daniels, an African-American male, was Senior Deputy Commissioner at DOC from January 17, 2017, to April 6, 2017. On February 13, 2017, then DOC

Commissioner Defendant Ponte instructed Daniels to review Central Operations Desk reports and present recommendations to improve the Executive Staff. Upon completion of his report, Daniels "was disparaged" by Defendants Thamkittikasem and Brann. Brann also described Daniels as "arrogant." Daniels was hindered from performing the work he had been hired to do because Brann, among others, "intentionally tried to cover up the violence within Rikers Island and keep African American supervisors 'in the dark'" about incidents of violence. After Daniels repeatedly was denied "operational authority," he filed a complaint with the Office of Equal Employment Opportunity on April 5, 2017. On April 6, 2017, Daniels was summoned to Ponte's office, where Ponte told Daniels to "resign or be fired." Daniels resigned.

Plaintiff Keith Taylor, an African American male, was DOC Assistant Commissioner from February 4, 2015, to February 28, 2017. Taylor was assigned to the Correction Intelligence Bureau ("CIB"), where his requests for additional support, personnel and equipment were ignored. Beginning in April 2016, Taylor believes that Defendant Brann, among others, instructed Taylor's staff to ignore his directives and advised representatives from other government agencies to discontinue their working relationship with Taylor. On February 24, 2017, although Taylor never received notice that his work was deficient, Defendant Thamkittikasem asked Taylor for his letter of resignation.[1]

Plaintiff Hakim S. El-Quhir, an African American male, was a DOC employee from December 8, 1998, to April 17, 2017. On February 1, 2016, El-Quhir became Warden of the DOC Transportation Division. In this position, El-Quhir was reprimanded with several white supervisors for non-satisfactory performance. Following this incident, he was forced to retire in

---

[1] Neither the Complaint nor Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss states whether Taylor actually resigned.

lieu of demotion. On a separate occasion, El-Quhir saw Warden William Barnes, a white supervisor, reprimanded for non-satisfactory performance. Unlike El-Quhir, Barnes was not forced to retire or face demotion. Instead, Barnes was reassigned to a new post. On September 8, 2017, El-Quhir filed an Equal Employment Opportunity Commission ("EEOC") Charge of Discrimination. He received a Right to Sue letter around February 26, 2018.

Plaintiff Clement Glenn, an African American male, has worked in various positions at DOC since June 2004. During the relevant time[2], Glenn served as Deputy Warden and Warden. When Glenn was promoted to Warden, Defendant Murphy subjected him to personnel and fiscal restrictions. Glenn also experienced intensified levels of scrutiny and "tactics . . . aimed at marginalizing him" that "culminated in the imposition of a housing violation" against him in March 2016. In August 2016, Glenn was transferred to the Rikers Island West Facility, where he was afforded minimal staff and resources and compensated less than his non-African American counterparts. On September 8, 2017, Glenn filed a Charge of Discrimination against the DOC with the New York State Division of Human Rights and the EEOC. The Right to Sue letter is pending.

Plaintiff Anthony Toulon, an African American male, worked at DOC for 32 years and was Deputy Warden during the relevant time. In February 2013, Toulon applied and was interviewed for a promotion to the rank of Warden Level III. Deputy Commissioner of Human Resources, Alan Vengersky, confirmed that Toulon made the list of qualified candidates. At an unspecified time, a new list of qualified candidates was released, and Toulon was not on the list. After learning he was removed from the list, Toulon supplied "documentation that he completed

---

[2]As to Plaintiffs Clement Glenn and Anthony Toulon, the Complaint describes events that occurred outside the limitations period, but only relevant events that are not time-barred are included in this summary.

the process to be on the qualified list." In January 2015, Toulon, along with three other African Americans, met with Ponte, who told them they would all be promoted. Yet, to date, only one of the four has received a promotion to Warden. Meanwhile, non-African American individuals Sullivan, Murphy and Turhan Gumusdere, who had "less tenure and seniority in the rank of Deputy Warden" than Toulon, received promotions. On September 16, 2017, Toulon filed an EEOC Charge of Discrimination against the DOC. He received a Right to Sue letter on April 13, 2018.

Plaintiffs commenced this action on December 20, 2017.

## II. STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[]" claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. On a Rule 12(b)(6) motion, "all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor." *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 59 (2d Cir. 2016) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015)).

## III. DISCUSSION

Plaintiffs bring four claims. Count One is a Title VII claim. Counts Two and Three are NYSHRL and NYCHRL claims respectively, alleging that Defendants engaged in unlawful

4

discriminatory employment practices. Count Four is a § 1983 claim against individual Defendants and against the City and DOC under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

Defendants move for partial dismissal of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that it fails to state a claim with respect to Plaintiffs El-Quhir, Glenn and Toulon, and fails to state a claim against the City and DOC for failure to plead *Monell* liability. The motion is granted as to these Plaintiffs and these Defendants. Because Plaintiffs' claims against the DOC and City are dismissed, the Title VII claims are dismissed as a matter of law. *See Raspardo v. Carlone*, 770 F.3d 97, 113 (2d Cir. 2014); *accord Moore v. City of New York*, No. 15 Civ. 6600, 2018 WL 3491286, at \*14 (S.D.N.Y. July 20, 2018) (no individual liability for claims brought under Title VII). Defendants also move to dismiss claims against Defendant Brann for failure to allege her personal involvement in any constitutional deprivation. The motion in this respect is denied.

**A. Timeliness**

**1. Section 1983, NYSHRL and NYCHRL**

Glenn and Toulon's § 1983, NYSHRL and NYCHRL claims are dismissed to the extent they are based on conduct that occurred outside the statute of limitations period. "'Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint.'" *Thea v. Kleinhandler*, 807 F.3d 492, 501 (2d Cir. 2015) (quoting *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 798 n. 12 (2d Cir. 2014)). Section 1983 claims brought in New York are "subject to a three-year statute of limitations . . . ." *Milan v. Wertheimer*, 808 F.3d 961, 963 (2d Cir. 2015). The NYSHRL and NYCHRL also have a three-

5

year statute of limitations, N.Y. C.P.L.R. § 214(2); N.Y.C. Admin. Code § 8–502(d), plus the tolled period during the pendency of the EEOC proceedings. *Mooney v. City of New York*, No. 18 Civ. 328, 2018 WL 4356733, at *4 (S.D.N.Y. Sept. 12, 2018). A claim of discrimination "accrues when the plaintiff knew or should have known of the disparate treatment." *Fahs Const. Grp., Inc. v. Gray*, 725 F.3d 289, 292 (2d Cir. 2013).

To the extent that Glenn's NYSHRL and NYCHRL claims are based on events prior to September 8, 2014, they are time-barred. Glenn filed his charge of discrimination with the EEOC on September 8, 2017. Because Glenn has yet to receive his right to sue letter and the limitations period is tolled during the pendency of EEOC proceedings, claims based on events prior to September 8, 2014 -- three years before filing his right to sue letter -- are time-barred. Glenn's § 1983 claims based on events prior to December 20, 2014 -- three years before this action was filed -- are time-barred.

Plaintiffs argue that consideration of events outside the limitations period is appropriate because the Complaint pleads a hostile work environment. This argument is unpersuasive. "'[C]onsideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period.'" *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 75 (2d Cir. 2010) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002)). Actions outside the limitations period may be considered along with timely acts as part of the same hostile work environment if the acts before and after the limitations period are sufficiently related. *See McCullam*, 609 F.3d at 75–76; *accord Staten v. City of New York*, 653 Fed. App'x 78, 80 (2d Cir. 2016) (summary order). Here, even though the Complaint characterizes the discriminatory acts against Plaintiffs

as "hostile working conditions," Glenn's untimely allegations related to denial of cash overtime opportunities and compensation claims are not sufficiently similar to the timely failure to promote and demotion allegations.

To the extent that Toulon's NYSHRL and NYCHRL claims are based on events prior to September 23, 2014, they are time-barred. This action was commenced on December 20, 2017, and included Toulon as a plaintiff. Taking into account the three-year limitations period -- in addition to the 209 days that his claims were tolled while they were pending before the EEOC from September 16, 2017, to April 13, 2018 -- any claims based on events prior to May 26, 2014, are time-barred. As to Toulon's § 1983 claims, events prior to December 21, 2014, are time barred.

### B. Merits

#### 1. NYSHRL and § 1983

El-Quhir, Glenn and Toulon's NYSHRL and § 1983 claims are dismissed because the Complaint fails to plead facts that give rise to an inference of discrimination -- i.e., that race was a motivating factor in an adverse employment action taken against each Plaintiff. To state a claim under both statutes "a plaintiff must plausibly allege that (1) the employer took adverse action against him and (2) his race . . . was a motivating factor in the employment decision." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 88, 91 (2d Cir. 2015) (stating requirements for discrimination claim under Title VII, which are the same under § 1983); *Tolbert v. Smith*, 790 F.3d 427, 439 (2d Cir. 2015) (stating that "claims under Title VII and the NYSHRL are governed by the same standard"). To survive a motion to dismiss, the facts alleged in the complaint "need only give plausible support to a minimal inference of discriminatory motivation." *Littlejohn*, 795 F.3d at 311.

"An inference of discrimination can arise from circumstances including . . . more favorable treatment of employees not in the protected group." *Littlejohn*, 795 F.3d at 312 (internal quotation marks omitted) (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)). At the motion to dismiss stage, "Plaintiff does not have to prove that the comparators were similarly situated in all material aspects, [but] he must allege facts that plausibly support a finding that they were similarly situated." *Wooding v. Winthrop Univ. Hosp.*, No. 16 Civ. 4477, 2017 WL 2559942, at *10 (E.D.N.Y. June 12, 2017) (granting motion to dismiss because the complaint failed to state comparators' positions, responsibilities, qualifications or quality of their work); *see Yan v. Ziba Mode Inc.*, No. 15 Civ. 47, 2016 WL 1276456, at *5 (S.D.N.Y. Mar. 29, 2016) (dismissing disparate treatment claim where plaintiff "fail[ed] to plead any facts regarding how [the plaintiff's comparators'] identities, experience levels, and conduct compared to [the p]laintiff's").

### a. Hakim S. El-Quhir

The Complaint fails to allege a plausible inference of discrimination with respect to El-Quhir because it does not allege facts suggesting that race was at least a motivating factor in El-Quhir's termination. *See Littlejohn*, 795 F.3d at 307. On February 1, 2016, El-Quhir was designated Warden of the DOC Transportation Division. El-Quhir, who is African American, claims that he and other unidentified supervisors who are not African American were reprimanded for unsatisfactory performance, but only he was forced to retire or be demoted. After El-Quhir was reprimanded, Ponte told El-Quhir to either "retire or be demoted back to his last Civil Service Rank . . . ." On March 31, 2017, he was removed from his command. The Complaint alleges that non-African American Warden William Barnes was also reprimanded on

8

a different occasion for unsatisfactory performance, but rather than be removed from his position, Barnes was reassigned to a newly created post.

The Complaint fails to plead sufficient facts to determine whether Barnes and the unidentified supervisors are similarly situated to El-Quhir. *See Wooding*, 2017 WL 2559942, at *10. The Complaint lacks any specificity as to the alleged comparators' qualifications, responsibilities, employment history and conduct that gave rise to their reprimands. The Complaint also neglects to describe the circumstances that gave rise to El-Quhir's reprimand and ultimate resignation. Given the dearth of information, the Complaint fails to plead facts giving rise to an inference of discrimination with respect to El-Quhir.

### b. Clement Glenn

As to the incidents that are not time-barred with respect to Glenn, the Complaint similarly includes no details about Glenn's alleged comparators. The Complaint alleges that in August 2016, Glenn was transferred to the Riker's West facility, where he was "afforded only minimal staff, resources, and support, unlike his non-African American counterparts, namely William Barnes and Brian Sullivan." Glenn worked "longer hours" and took on "substantially more responsibilities with less resources and compensation" than DiBernadino, Sullivan and Murphy. The Complaint provides no details as to Barnes's, Sullivan's and DiBernadino's positions, responsibilities, qualifications or quality of their work. *Wooding*, 2017 WL 2559942, at *10. The Complaint explicitly states that Murphy is not similarly situated; Defendant Murphy was Chief of Department from February 2015 to 2017, whereas Glenn is a Warden. The Complaint describes Sullivan as Glenn's "subordinate[]" and subsequently states that Sullivan was "promoted more quickly and into more prominent positions." The Complaint's "comparators" section contains no additional details on DiBernadino, Sullivan or Barnes. The Complaint fails

9

to allege facts that give rise to the inference that that Glenn's treatment was motivated by discriminatory intent.

### c. Anthony Toulon

The Complaint fails to plead a plausible inference that racial discrimination was a factor in the failure to promote Toulon. The conclusory allegation that "the Department has promoted numerous non-African American individuals with less credentials, experience, knowledge, tenure and seniority in rank…[o]ne example of this [is] William Barnes, a white male" is too conclusory to infer discriminatory animus.

### 2. NYCHRL

El-Quhir, Glenn and Toulon's NYCHRL claims are dismissed because the Complaint does not plausibly suggest that they were treated less well because of their race. "[C]ourts must analyze NYCHRL claims separately and independently from any federal and state law claims." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013). NYCHRL claims are to be reviewed more liberally than Title VII claims, and the provisions of the NYCHRL must be construed broadly in favor of plaintiffs alleging discrimination. *See id*; *accord Ochoa v. Fed. Express Corp.*, No. 16 Civ. 8729, 2018 WL 3996928, at *4 (S.D.N.Y. Aug. 21, 2018). To state a claim under the NYCHRL, a plaintiff need only show that he was treated "less well" than other employees because of his protected characteristic. *Mihalik*, 715 F.3d at 110; *accord Stinson v. City Univ. of New York*, No. 17 Civ. 3949, 2018 WL 2727886, at *6 (S.D.N.Y. June 6, 2018).

The Complaint fails to meet this burden with respect to El-Quhir, Glenn and Toulon. As discussed above, the Complaint lacks sufficient information to conclude that they were treated less well than their alleged comparators because of race. *See Stinson*, 2018 WL 2727886, at *8

("While the NYCHRL embodies a broader conception of actionable discrimination . . . than its federal and state counterparts, it still requires that the adverse employment action take place under circumstances that give rise to an inference of discrimination" (citing *Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010) (internal quotation marks omitted)).).

### 3. Claims against Defendant Cynthia Brann

Defendants' motion to dismiss claims against Cynthia Brann are denied because the Complaint alleges her direct involvement in the allegedly discriminatory actions. Individual liability under § 1983 requires that a defendant was personally involved in the alleged violation. *See Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994); *accord Cooper v. City of New York*, No. 17 Civ. 1517, 2018 WL 4762248, at *5 (E.D.N.Y. Sept. 29, 2018). A claim under § 1983 cannot be based on vicarious liability and therefore must plead each "defendant's personal involvement in the claimed violation in order to hold that defendant liable in his individual capacity." *Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir. 2016) (internal quotation marks omitted). The NYSHRL and NYCHRL also require Defendant's personal involvement. *See* N.Y. Exec. L. § 296(6); N.Y.C. Admin. Code § 8–107(6); *Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004); *accord Lewis v. Roosevelt Island Operating Corp.*, 246 F. Supp. 3d 979, 992 (S.D.N.Y. 2017).

The Complaint sufficiently pleads Brann's direct participation in the allegedly discriminatory behavior toward Plaintiffs Charles Daniels and Keith Taylor. The Complaint alleges that Daniels was subjected to "a barrage of unwarranted, disparaging comments, critiques, and criticisms" from colleagues, including Brann. The Complaint alleges that Brann told Daniels that he "did not know what he was doing," called him "arrogant," and "always kept the African American supervisors 'out of the loop' and 'in the dark' on matters that occurred

within the jails." As a result, Plaintiffs "were forced to listen to 'radio traffic' for notification of violent incidents in order to properly document violence incidents."

Brann allegedly also undermined Taylor's authority and obstructed his ability to do his job. Brann "directed uniformed staff to disregard" Taylor's orders, and she "advised representatives from outside government agencies to discontinue their working relationships with Plaintiff Taylor." Brann "stripped [Plaintiff Taylor] of all authority and responsibilities within CIB."

While the Complaint's generalized allegations that Brann "circumvented and usurped" Daniels' and Taylor's authority are insufficient alone to plead her personal involvement, taken together with claims that she directly participated in meetings that denigrated Daniels, withheld information from Plaintiffs, and instructed others to ignore Plaintiffs' directives, the allegations are sufficient to survive a motion to dismiss Brann as a defendant.

### 4. Municipal liability[3] under § 1983

Defendants seek to dismiss a municipal liability claim against the City under § 1983, and both parties briefed the issue. The motion is denied because no such claim exists in the Complaint; the only § 1983 claim appears in the Fourth Cause of Action, which is asserted only against individual Defendants and not the City.

Plaintiffs' application to replead is denied to the extent that Plaintiffs would add a *Monell* claim against the City based on the existing, insufficient, factual allegations in the Complaint. *F5 Capital v. Pappas*, 856 F.3d 61, 89 (2d Cir. 2017), *cert denied*, 138 S. Ct. 473 (2017) ("Leave to amend may properly be denied if the amendment would be futile"). To survive a motion to

---

[3] The remaining Plaintiffs' claims against the City are not the subject of this Opinion and are not addressed herein.

dismiss, a claim against the City must plead that the individuals who engaged in illegal conduct did so "pursuant to official municipal policy." *Outlaw v. City of Hartford*, 884 F.3d 351, 372 (2d Cir. 2018) (internal quotation marks omitted). "'Official municipal policy includes' not only 'the decisions of a government's lawmakers,' but also 'the acts of its policymaking officials, and *practices* so persistent and widespread as to practically have the force of law.'" *Id*. (emphasis in original) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). "The critical characteristic" in determining who has final policymaking authority in the employment context is whether a particular "municipal official has authority to formulate the rules governing [the challenged] personnel decisions rather than authority to make decisions pursuant to those rules." *Moore*, 2018 WL 3491286, at *22 (internal quotation marks omitted); *accord Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir 2000) (holding that, for the municipality to be liable, the official must be responsible for making policy with respect to the challenged conduct). "It does not suffice for these purposes that the official has been granted discretion in the performance of his duties." *Id*. Plaintiffs bear the burden of establishing that an official is the final policymaker in a given area. *Jeffes,* 208 F.3d at 57.

Plaintiffs seek to hold the City liable on a theory that "Defendants maintained a policy or practice that has a disparate impact on African American employees, namely a standard-less process that allows non-African American supervisors to retain all power and control, to refuse to promote deserving African American employees, and to relegate African American employees to positions with little or no autonomy."

The Complaint does not allege that this alleged "practice" or "process" derives from any acts of final policymakers. *See Outlaw*, 884 F.3d at 372 ("Plaintiffs who seek to impose liability on local governments under § 1983 must prove, *inter alia*, that the individuals who violated their

federal rights took 'action pursuant to official municipal policy.'" (quoting *Monell*, 436 U.S. at 691) (internal citation omitted). The Complaint alleges that various Defendants fired or denied promotions to individual Plaintiffs, or diminished the authority or responsibility of certain Plaintiffs. The Complaint does not allege facts showing that these Defendants did anything more than exercise discretion, or that they had the authority to make policy such that they could implement a DOC-wide practice of firing or suppressing African American employees. The Complaint alleges that Defendant Ponte, as Commissioner of the DOC, was "responsible for the development, implementation and enforcement of all DOC practices and policies." But the Complaint does not allege facts to show that Defendants who engaged in discriminatory conduct did so pursuant to Ponte's acts or directives as policymaker. *See also Littlejohn*, 795 F.3d 297 at 315 (citing *Soto v. Schembri*, 960 F. Supp. 751, 759 (S.D.N.Y.1997) ("noting that [t]he New York City Charter vests final policymaking authority in the Mayor and City Council and that [t]he Charter vests policymaking authority with respect to personnel decisions with the [City's] Personnel Director [and not the DOC Commissioner]")) (internal quotation marks omitted).

### 5. Claims Against the DOC

Plaintiffs' claims against the DOC are dismissed because, as an agency of New York City, the DOC is not a suable entity. N.Y.C. Charter ch. 17, § 396 ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the [C]ity of New York and not in that of any agency, except where otherwise provided by law."); *see also Moore*, 2017 WL 3491286, at *8 ("directing [Plaintiff] to name the City of New York as the proper Defendant for his allegations against the DOC"); *Horizon v. Corizone Med. Dept. Staff*, No. 14 Civ. 192, 2015 WL 273690, at *3 (S.D.N.Y. Jan. 22, 2015) ("The DOC, however, is not a suable entity.").

### C. Leave to Replead

Plaintiffs request leave to file a Second Amended Complaint "to cure any deficiencies or defects in the pleading."

Leave to amend should be freely given when justice so requires. Fed. R. Civ. P. 15(a). "However, where the [party] is unable to demonstrate that he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied." *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999); *accord Nypl v. JPMorgan Chase & Co.*, No. 15 Civ. 9300, 2017 WL 1133446, at *7 (S.D.N.Y. Mar. 24, 2017). Leave to amend the Complaint also may be denied where the Defendant "fails to specify either to the district court or to the court of appeals how amendment would cure the pleading deficiencies. . . ." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014).

Any application for leave to replead shall be made as provided below.

### IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part. Claims on behalf of Plaintiffs El-Quhir, Glenn and Toulon are dismissed, and all claims against the DOC are dismissed.

Should Plaintiffs wish to seek leave to replead, Plaintiffs shall file within 21 days a red-lined version of a proposed amended complaint, showing changes from the current Complaint, together with a letter application, not to exceed three pages, explaining how the legal deficiencies identified in this Opinion have been cured. No pre-motion conference is necessary.

The Clerk of Court is respectfully directed to close the motion at Docket Number 40.

Dated: January 17, 2019
New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**